IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL F. EDWARDS, JR., } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 06-AR-0068-S |
| } | |
| FEDERAL EXPRESS CORPORATION, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant Federal Express Corporation ("FedEx"), for summary judgment on the above-entitled action brought by plaintiff, Samuel F. Edwards, Jr. ("Edwards"), for unlawful discrimination in violation of 42 U.S.C. § 1981. Also for the court's consideration are FedEx's opposition to certain of Edwards's evidentiary submissions, FedEx's motion to deem undisputed facts admitted by plaintiff, Edwards's motion to strike FedEx's motion to deem undisputed facts admitted, and Edwards's motion to supplement evidence in response to FedEx's motion for summary judgment. For the reasons that follow, each of FedEx's motions will be denied, Edwards's motion to strike will be denied, and Edwards's motion to supplement evidence will be granted.

*Facts*

Many of the facts material to FedEx's summary-judgment motion are in dispute. The following facts are presented in the light most favorable to Edwards, the non-movant.

FedEx is an international corporation specializing in transport and delivery services.  Headquartered in Memphis, Tennessee and employing over 200,000 individuals, FedEx is among the largest companies incorporated in the United States.  From 1988 until August 15, 2005, Edwards, who is black, was one of FedEx's many employees.  After roughly 15 years at FedEx, Edwards began working at the FedEx facility in Irondale, Alabama in June 2003 as a manager in the division entitled Domestic Ground Operations.  When he started working at Irondale, his senior manager was Terri-Lynn Patton, a black female.

In early 2004, FedEx instituted the policy by which couriers are discouraged from driving more than 12 hours per day.  The time a courier spends taking breaks does not count toward his or her driving time, so couriers can be "on duty" for more than 12 hours per day so long as they do not exceed 12 hours of actual driving time.  In June 2004, FedEx received an anonymous complaint that Edwards was adding unpaid breaks to couriers' timecards in order to conceal violations of the 12-hour rule.  In response to these anonymous calls, Randy King, a Managing Director of FedEx and the individual to whom Patton reported, collected statements from all of the managers at the Irondale facility.  In his statement, Edwards said that he ran timecard reports every day, and that he would get a statement from any employee whom he suspected of having a 12-hour violation.  Later that month, King held a meeting with

the managers at Irondale to stress the importance of ensuring that timecards were accurate and that no employee engaged in document falsification.

On several occasions during his tenure at Irondale, Edwards had to explain to Patton why he and another employee had given conflicting accounts of something that he had told the employee. In September 2004, Patton sent a memorandum to Edwards stating that she found it

> necessary to address the continuation of discrepancies between what the employees are telling management you specifically communicated to them and what you are stating was relayed to them . . . . Although you continuously state that employees either misunderstood or are not being truthful, it is too often these untruths are occurring and the impact that they have on our station's ability to be fair and consistent is detrimental.

In her memorandum to Edwards, Patton listed six specific occasions in which Edwards and another FedEx employee had given inconsistent renditions of something Edwards had said. Patton says she documented these occasions because she believed there were too many instances in which Edwards said that other people were lying. Edwards says that the other employees were "covering" for themselves.

In early 2005, the Irondale station failed a company audit because of its noncompliance with FedEx's petty-cash policy. Under that policy, which all Irondale managers, including Edwards, acknowledged and signed in February 2005, employees are not

3

permitted to make purchases for items over $2 unless they attach a receipt to the request.  After Edwards was fired from FedEx, Sharon Gray, a FedEx customer service agent who was responsible for the petty-cash account at Irondale, wrote a letter to the FedEx Petty Cash Department saying that Edwards had "borrowed money from the petty cash fund without providing receipts or repaying the money that was borrowed."  Patton received a copy of Gray's letter.  Edwards disputes the letter's authenticity and its substance.  According to Edwards, neither he nor any of the other managers at the Irondale facility complied with the petty-cash policy.

On April 15, 2005, Edwards approached employee Paul Gibson to tell him that his timecard showed that he worked 12 hours and 27 minutes one day, and that he would receive counseling for exceeding the 12-hour maximum.  According to Edwards, Gibson then said that he had forgotten to enter his break time, and that he had actually taken a break from 3:00 to 3:30 that day.[1]  Gibson then asked Edwards to make the appropriate change to the timecard.  Edwards made the requested change, and pursuant to FedEx policy, had Gibson sign off on documentation indicating that Edwards had made the change.  Edwards did not conduct an investigation to determine whether Gibson actually took a break from 3:00 to 3:30, but FedEx records show that Gibson made deliveries at 3:12 and 3:25.  FedEx

---

[1] Patton testified to the contrary; FedEx says that Gibson told Patton that he did *not* tell Edwards that he took an unaccounted for break, but rather that he asked Edwards to make the change in order to avoid a 12-hour violation.

4

policy does not require managers to investigate a timecard change if the change is necessitated by an employee's having forgotten to enter his or her break time. Although not required to investigate every timecard change, Patton initiated an investigation to determine whether Edwards should have changed Gibson's timecard. Patton says she investigated because Gibson told her that he asked Edwards to make the change in order to avoid violating the 12-hour rule.

The FedEx People Manual provides that an employee will be dismissed if he or she engages in "deliberate falsification of Company documents." In other words, FedEx has a "zero tolerance" policy regarding deliberate falsification. After conducting the investigation, Patton, King, and the FedEx Human Resources Department ("HR Department") determined that the change Edwards made to Gibson's timecard constituted a violation of the deliberate-falsification policy, and that Edwards's employment should be terminated. On April 22, 2005, Patton issued Edwards a letter telling him that he was fired for intentionally falsifying Gibson's timecard. Gibson was not fired, but Patton gave him written disciplinary counseling. FedEx says that it retained Gibson because Gibson did not actually enter the change (so he could not have "deliberately" changed anything), because Patton could not determine whether Gibson or Edwards chose the break time that was entered, and because Edwards, a manager, was held to a

5

higher standard than other employees. After Edwards was fired, FedEx filled the vacant position with Mitchell Brian Garret, who is white.

On April 25, 2005, Edwards challenged his termination through FedEx's Guaranteed Fair Treatment ("GFT") procedure. The GFT procedure consists of 3 stages. In Edwards's Step 1 meeting, King asked Edwards about the incident with Gibson. Edwards told King that he did not research whether Gibson actually took a break from 3:00 to 3:30. Edwards also told King that he thought that he was being treated differently from other managers, who, Edwards says, had also made alterations to time cards but were not consequently fired. Those managers, according to Edwards, were Jason Griffin and Chad Cooper, both of whom are white. At the end of the Step 1 meeting, King upheld Edwards's termination. FedEx says that King determined that, based on Edwards's tenure, the training Edwards had received, and Edwards's having signed two forms acknowledging FedEx's policy regarding deliberate falsification, it was "inconceivable to [him] that [Edwards] would change the time for an employee that was simply avoiding a 12 hour violation."

On May 23, 2005, FedEx vice president Ted Merida upheld Edwards's termination in Step 2 of Edwards's GTF procedure. Merida concluded in a letter to Edwards that, as manager, Edwards was "responsible for fully investigating this situation and [that he] failed to do so. Had [he] conducted even a cursory investigation

[he] would have discovered [that Gibson] was working during the time he claimed to have been on break." Merida also wrote in his letter that the situations involving other employees changing timecard information were not similar to that of Edwards, so that Edwards had not been disparately treated. Edwards maintains that under FedEx policy, he had no duty to investigate the timecard change that Gibson requested he make.

Step 3 of Edwards's GFT procedure took place in July and August 2005. During Step 3, the HR Compliance Department recommended that the Appeals Board ("Board") overturn Edwards's termination. FedEx says that when the Compliance Department made this recommendation, it was unaware of Edwards's alleged petty-cash issues and the frequent disparities between the statements of Edwards and other employees. Although Board initially voted to overturn Edwards's termination, FedEx never apprised Edwards of that decision.

When informed that Edwards would be reinstated, Patton asked FedEx Vice President, Dave Rebholz, what she should do about Edwards's alleged petty-cash violations. Unaware of the petty-cash issue, Rebholz asked Patton if Edwards had been the subject of any other integrity issues in the past, and Patton identified the memorandum she wrote to Edwards documenting the six incidents wherein Edwards gave statements that were inconsistent with those of other employees. This memorandum was in the file to which the

7

Board had access while making its Step-3 determination, but the Board apparently did not consider it at first. Rebholz concluded that the petty-cash issue went to the heart of Edwards's integrity and asked the Board to reconsider its reversal of Edwards's termination. The Board revisited the issue on August 17, 2005. Based on the additional information that it had not previously considered, the Board reversed its own decision and upheld Edwards's termination.

Edwards filed this action on January 12, 2006, alleging that FedEx discriminated against him because of his race in violation of 42 U.S.C. § 1981. Edwards says that he was unfairly terminated because managers Griffin and Cooper, both of whom are white, had committed similar policy violations but were not fired. According to Edwards, Griffin changed the time on part-time employee Joe Logan's timecard several times over an eight-month period in order to keep Logan's reported hours under thirty hours per week. Also according to Edwards, Logan told Patton roughly four or five times that Griffin had been "stealing time" from him but that Patton "did nothing about the situation." FedEx admits that Griffin made minor changes to Logan's timecards. It says, however, that Griffin did so with Logan's approval, so that Logan's actual start time as stated on his timecard coincided with his scheduled start time. According to FedEx, these changes were immaterial, because Logan would have been paid according to his scheduled start time

8

regardless of whether his actual start time was earlier.

With respect to Cooper, according to Edwards, in or about April 2005, courier, Ken Camp, told Cooper in Edwards's office that "you know I went over twelve hours but I didn't put in my break time," and that Cooper responded, "okay, let's go in and get this cleared up, and let's get your break time in there because you know you can't have a twelve-hour violation." FedEx denies that Camp ever asked Cooper to falsify his time in order to avoid a twelve-hour violation. FedEx also says that in April 2005, Cooper was a new manager who had not attended King's timecard meeting in June 2004.

In addition to his belief that he was treated less favorably than Griffin or Cooper, Edwards says that Patton made repeated, abusive remarks regarding Edwards's race. Edwards says that Patton told him one time that "she didn't trust black men" and that she "was raised by a father who don't believe in black men, you don't never trust them, don't never rely on black men, period, for anything." Moreover, Edwards says that Patton called him "nigger" on several occasions during private conversations.

*Summary Judgment Standard*

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The

9

court may enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).

*Analysis*

**I.   FedEx's Motion for Summary Judgment**

In order to show that he was unlawfully discriminated on the basis of his race in violation of 42 U.S.C. § 1981, Edwards must establish a *prima facie* showing of discriminatory intent with direct, circumstantial, or statistical evidence.  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Edwards does not contend that he can establish a *prima facie* showing with direct or statistical proof.  In order to avoid summary judgment, Edwards must therefore show that he can establish a circumstantial *prima facie* case by demonstrating that (1) he was a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside his protected class.  *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003); *Hammons v. Wallace State Community College*,

174 Fed. Appx. 459, 462 (11th Cir. 2006).  If Edwards is able to show that he can establish this *prima facie* showing, FedEx must articulate a legitimate, nondiscriminatory reason for the employment action.  *A.B.E.L. Services* at 1331.  If FedEx successfully rebuts the presumption that it discriminated against Edwards, the burden shifts back to Edwards to discredit FedEx's proffered reason for the employment action.  *Id.*

FedEx concedes for purposes of its summary-judgment motion that Edwards can establish the required circumstantial *prima facie* showing.  FedEx contends, however, that its actual reason for firing Edwards was legitimate and nondiscriminatory: that Edwards violated FedEx's deliberate-falsification policy, and that this violation was exacerbated by Edwards's previous petty-cash and conflicting-stories issues.  FedEx further argues that Edwards has no proof to rebut this legitimate, nondiscriminatory reason.  Edwards identifies two categories of evidence that he says constitute proof that FedEx's stated reason is pretextual: Patton's alleged bias against blacks, and the existence of two managers who engaged in similar misconduct to that of Edwards but were not fired.

### A. Patton's alleged statements to Edwards

Edwards first contends that Patton's repeated statements and actions toward him can establish that FedEx's stated reason for firing him was a pretext for unlawful discrimination.

Specifically, Edwards points to Patton having called him a "nigger" on multiple occasions, and having told him that she "didn't trust black men" and that she "was raised by a father who don't believe in black men, you don't never trust them, don't never rely on black men, period, for anything." The court agrees that these statements, if proven, could amount to evidence of pretext.

FedEx argues that the statements Patton allegedly made cannot discredit its articulated reason for firing Edwards because Edwards cannot show that those statements influenced the decision to terminate him. The court disagrees. Were Edwards to attempt to use Patton's statements as the only evidence of discrimination, such would be insufficient to establish discriminatory intent. However, Edwards need not establish a direct link between the statements and his termination in order to rebut FedEx's articulated reason for firing him – he only needs to show (1) that FedEx's legitimate nondiscriminatory reason should not be believed or (2) that, in light of all the evidence, discriminatory reasons more likely motivated the decision than FedEx's proffered reason. *See A.B.E.L. Services* at 1332. Although Patton's statements (which FedEx denies to have been made) would not *necessarily* lead a jury to disbelieve FedEx or to conclude that Patton's bias more likely motivated the decision to terminate Edwards, they might. Moreover, although FedEx is correct that isolated and stray comments cannot establish pretext, *Steger v. General Elec. Co.*, 318 F.3d 1066, 1079

(11th Cir. 2003), according to Edwards, the offensive statements that Patton made were frequent, not "stray" or "isolated."

FedEx also argues that Patton's alleged statements cannot evince discriminatory intent because FedEx would have fired Edwards even in the absence of Patton's alleged racial animus.  This argument, however, is not necessarily supported by the evidence.  In Step 3 of Edwards's GFT procedure, the Board voted to overturn Edwards's termination.  It was not until Patton again became involved in the process – when she raised issues the Board had not previously considered – that the Board reversed its decision and decided to uphold Edwards's termination.  This case therefore presents an interesting issue that may be one of first impression: although the Board may have upheld Edwards's termination if it had considered Edwards's entire history in the first instance, the fact is that the Board did not look at this history – and thus decide to uphold Edwards's termination – until *after* Patton re-interjected herself into the process.  Under these facts, the court cannot conclude that FedEx would have fired Edwards in the absence of Patton's alleged bias.

**B. Edwards's Comparators**

Edwards also attempts to prove pretext by demonstrating that Griffin and Cooper engaged in similar conduct in which he engaged, but were not fired because of it.  Comparators like Griffin and Cooper are only relevant if they were "involved in or accused of

13

the same or similar conduct and [were] disciplined in different ways." *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006). FedEx contends that the situations involving Cooper and Griffin were fundamentally different from that of Edwards, so that FedEx's having retained the two white managers cannot function as evidence of pretext.

### 1. Jason Griffin

FedEx contends that Griffin is not an appropriate comparator because he never changed any of part-time employee Logan's timecards in order to avoid Logan having been credited for working in excess of his maximum authorized number of hours. FedEx says that Logan generally worked fewer than 20 hours per week, so Gibson could not have "falsified" any documents in order to keep Logan's reported time under 30 hours per week.[2] FedEx further contends that Griffin merely changed Logan's actual start time to reflect his scheduled start time.

Even if the court assumes that these facts are true, and even if Edwards does not in fact know that Griffin changed Logan's timecards in order to keep Logan's reported hours under a certain amount, the court could not conclude that Griffin never violated FedEx's deliberate-falsification policy. Edwards says that he has personal knowledge that Logan told Patton on several occasions that

---

[2] Edwards says that managers are responsible for keeping part-time employees' hours under 30 per week; FedEx counters that Edwards has no personal knowledge of the details concerning Logan's employment

14

Griffin had "stolen time" from him, and that Patton did not investigate the situation or take any action against Griffin as a result.  Comparators must be similarly situated in all "relevant respects."  *Jones v. Bessemer Carraway Med. Cts.*, 137 F.3d 1306, 1311 (11th Cir. 1998).  If Edwards can prove that Griffin deliberately falsified Logan's timecard by "stealing time," then in light of FedEx having fired Edwards for deliberate falsification, a factfinder might conclude that Griffin is an appropriate comparator.

### 2. Chad Cooper

FedEx also argues that Cooper cannot serve as a comparator to Edwards because the timecard for Camp, Cooper's subordinate, was so riddled with errors that it was rejected by the FedEx system and had to be altered in order for Camp to be credited for his work. Cooper may indeed have corrected – *i.e.*, not "deliberately falsified" – Camp's timecard so that Camp's time could be properly entered into FedEx's system.  It also may be true that Cooper did not receive the same training with respect to FedEx's deliberate-falsification policy as did Edwards.  Edwards may nevertheless be able to prove that Camp told Cooper that he had entered more than twelve hours on his timecard but that he had not accounted for his break time, and that Cooper responded by saying "let's go in and get this cleared up, and let's get your break time in there because you know you can't have a twelve-hour violation."

The court cannot, based on the evidence submitted, conclude that Cooper is or is not a proper comparator. FedEx says that even if Edwards's allegation is true, to correct a timecard in order to accurately account for an employee break is not a "deliberate falsification" of a company document. Edwards counters that he did not deliberately falsify Gibson's timecard either – he says that he merely added a break that Gibson told him he took. FedEx disputes Edwards's recitation of this conversation, contending that Gibson asked Edwards to change the timecard so he would not be found to have violated the 12-hour rule. FedEx further contends that had Edwards checked Gibson's delivery log, he would have known that Gibson did not take a break from 3:00 to 3:30 that day. Edwards counters that he was not obligated to investigate every timecard change and that the only reason Patton investigated the change to Gibson's timecard was because Edwards is black. FedEx says that this is not true, and that Patton checked into the change because Gibson told her that he had previously told Edwards that he did not take a break. Edwards denies that Gibson said this to Patton. The court is left with a classic (and literal) situation of "he said"/"she said," and it must not substitute itself for a jury by attempting to determine who is telling the truth and who is not. It therefore cannot conclude at this time that Cooper is not an appropriate comparator.

Because Edwards has identified evidence which might establish

that FedEx's stated reason for firing him was a pretext for unlawful discrimination in violation of 42 U.S.C. § 1981, the court will deny FedEx's motion for summary judgment.

**II. FedEx's objection to evidence offered by Edwards in opposition to FedEx's motion for summary judgment**

FedEx objects to certain evidence that Edwards has presented in his opposition to FedEx's summary-judgment motion. Specifically, FedEx objects to the written statement of Logan for failing to comply with Rule 56(e), to the declaration of Jor-El Edwards for failing to comply with Rules 26 and 56, and to the declaration of Edwards for failing to comply with Rule 56(e) and Rule 37(c). The court will treat FedEx's notice of objection as a motion to strike, and will deny that motion as moot. First, FedEx's motion with respect to Jor-El Edwards's declaration is moot because the court did not consider that declaration in its assessment of FedEx's summary-judgment motion. Second, the court considered Edwards's declaration only to the extent that the declaration was based on facts of which Edwards claimed to have personal knowledge. Third, FedEx's motion is moot with respect to Logan's statement because the court will grant Edwards's motion to supplement evidence (part IV below), and because the court has considered only the facts alleged in Logan's affidavit to the extent Logan says he has personal knowledge of them.

**III. FedEx's motion to deem undisputed facts admitted by Edwards, and Edwards's motion to strike FedEx's motion**

FedEx also moves this court to deem undisputed certain facts that it says plaintiff has admitted. The court agrees with FedEx that Edwards, in his opposition to FedEx's motion for summary judgment, purports to "dispute" many facts which are clearly not disputable based on the record. Nevertheless, the court will not evaluate FedEx's motion line-by-line, granting it with respect to some of FedEx's factual averments and denying it with respect to others. Rather, the court finds it sufficient to state that it has assessed the merits of FedEx's summary-judgment motion while viewing the admissible evidence, as that evidence is found in the record, in the light most favorable to Edwards. The court has not simply accepted the facts as Edwards characterizes (or denies) them in his brief. FedEx's motion to deem undisputed facts admitted will therefore be denied as moot. Because FedEx's motion is moot, Edwards's motion to strike will also be denied as moot.

**IV. Edwards's motion to supplement evidence in response to FedEx's motion for summary judgment**

In FedEx's notice of objection to evidence offered by Edwards, FedEx objects to the statement of Joe Logan. First, it says that Logan does not expressly state that he has personal knowledge of the facts contained in his handwritten statement and that the statement is so vague, ambiguous and conclusory that it does not contain "facts" that could preclude summary judgment. Second, FedEx says that the statement is defective because FedEx could not verify the identity of the individual who notarized Logan's

18

statement.  After receiving FedEx's objection, Edwards filed a motion to supplement evidence in order to cure both of these defects.  His motion will be granted.  The court has considered Logan's supplemental affidavit.

*Conclusion*

For the foregoing reasons, FedEx's motion for summary judgment, and its motion to deem undisputed facts admitted by Edwards, will be denied.  The court will treat FedEx's notice of objection as a motion to strike, and will deny that motion as moot.  The court will deny Edwards's motion to strike and will grant Edwards's motion to supplement evidence.

DONE this 2nd day of February, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE